IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2025

## STATE OF TENNESSEE v. JONATHAN HALL

**Appeal from the Criminal Court for Shelby County
No. C2304204, C2401474  Carlyn L. Addison, Judge**

_____

### No. W2025-00641-CCA-R3-CD

_____

Defendant, Jonathan Hall, pled guilty in two separate cases to one count of aggravated assault and one count of possession of a firearm by a convicted felon in exchange for dismissal of a related domestic violence charge and an effective eight-year sentence with the trial court to determine the manner of service. The trial court sentenced Defendant to concurrent sentences of confinement, four years for the aggravated assault charge to be served at 100% and eight years for the possession of a firearm charge to be served at 85%. Defendant appeals, arguing that the trial court erred by denying his request for a suspended sentence. Upon our review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J. and CAMILLE R. MCMULLEN, J., joined.

Phyllis Aluko, Public Defender, and Barry W. Kuhn (on appeal) and Kathryn Abbey McLain (at trial), Assistant Public Defenders, for the appellant, Jonathan Hall.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General, and Joshua R. Gilbert, Assistant Attorney General (*pro hac vice*); Steve Mulroy, District Attorney General; and Alyssa Hennig, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

In 2023, a Shelby County Grand Jury indicted Defendant for one count of possession of a firearm by a convicted felon. In a separate case in 2024, a Shelby County Grand Jury indicted Defendant for one count of aggravated assault and one count of domestic assault. Defendant waived his right to a trial and pled guilty to possession of a firearm by a convicted felon, a B felony, and aggravated assault, a C felony. *See* T.C.A. §§ 39-17-1307, -13-102. Pursuant to the plea agreement, Defendant agreed to an effective eight-year sentence as a Range I, standard offender, with the manner of service to be determined by the trial court, and the State dismissed the domestic assault charge.

The relevant facts, as presented by the State at the plea hearing, are as follows:

Had these cases gone to trial, on the indictment ending in 474, the proof would have shown that on December 24th of 2022, Memphis police officers responded to an aggravated assault at 4863 Bontura Drive here in Shelby County. The victim in this case . . . Lashondra Lee ultimately stated that Jonathan Hall attacked her after they got home from the club. She stated that he punched her in the face and kicked her in the side rib area and told her that he would kill her if she tried to leave him.

She stated that she left the apartment and called her friend . . . to come get her. It's at that -- after that point that Memphis police officers were called and responded. Officers did observe swelling to Ms. Lee's face. She started packing her belongings to leave and as officers were getting ready to leave the scene, suspect Jonathan Hall arrived back, saw officers, and quickly drove away from the scene.

All parties changed location to complete the report. Over the course of the investigation Ms. Lee provided documentation from Baptist Hospital to Memphis Police Department saying that she was diagnosed with a broken jaw. Jonathan Hall was positively identified per information Ms. Lee provided to officers on the scene and through a photographic display. . . .

As to [the] [i]ndictment ending in 4204, had this case gone to trial, the proof would have been -- the State's proof would have shown that on June 26th of 2023, officers responded to a weapons law violation on Jackson Avenue and Pier Street on the above date. While on routine patrol[,] officers observed a red Nissan Sentra with no tags and no taillights. They

initiated a traffic stop.  The passenger in that vehicle was identified as this defendant Jonathan Hall who had outstanding warrants for the case I just previously read the plea on.  He was placed in custody on the scene.

For officer safety, suspect was patted down on the scene and later transported to 201 Poplar for processing and booking.  Officers checked the back of the vehicle at arrival to 201 Poplar at which point suspect had a Taurus G3 9[-]millimeter handgun tucked underneath his right foot.  He was later transported to GIB [General Investigation Bureau of Memphis Police Department] for an interview.  He did not want to give a statement.  He was shown to be a convicted felon on a couple of different felonies but the main one being an attempted carjacking that he had been convicted on July 17, 2014.

Defendant stipulated to the facts as summarized by the State and entered a guilty plea, which the court accepted.

At the sentencing hearing, the State submitted the presentence investigation report and victim impact statements and asked the court to order Defendant's sentences be served in confinement.  The presentence investigation report showed that Defendant's criminal history spanned from the time he was nineteen years old to the present and included numerous misdemeanors as well as robbery, carjacking, and unlawful possession of a handgun.  The State noted that because Defendant was now convicted of a B felony, there was no presumption that he was a favorable candidate for probation.  The State also argued that confinement was necessary to avoid depreciating the seriousness of the offenses.  The State maintained that Defendant had a history of committing violent crimes, continued to carry a firearm after being expressly prohibited from doing so, and that the assault in this case occurred after Defendant had taken domestic violence and anger management classes while incarcerated for prior felonies.

Defendant testified about his criminal history and stated that prior to his arrest in the two cases at issue, he had not had any charges in ten years.  He stated that all his previous offenses happened during his twenties when he did not know "where [his] life was headed" and "really didn't care . . . ."  Defendant admitted that he knew he was not supposed to carry a firearm but that he continued to do so for protection.  He said he no longer felt the need to carry a firearm and that he never intended to do so again.

Defendant described his personal and family obligations and presented proof of his nine-year employment at a dry-cleaning business, where he had recently been given more responsibilities.  He helped care for and support his four children, whom he saw on the weekends, and had a good co-parenting relationship with their mother.  Defendant

also said that he helped care for his older sister and her children who lived with him and that he often visited his aging parents and assisted them with tasks around their house.

Defendant emphasized his commitment to rehabilitation. Since the end of 2024, he had been participating in the Operation He's My Brother program where he had weekly counseling sessions with the director, Pastor Kenneth Harris. Defendant said he had "learned how to stop playing [the] victim and . . . to hold [himself] accountable for and stop, you know, doing the wrong thing and . . . better [himself] as a person." Defendant also informed the court that he had been accepted into the Group Violence Intervention Program and if granted probation, his participation in the program would include mental health treatment, parenting classes, anger management, and moral recognition therapy.

On cross-examination, Defendant refused to admit that he assaulted the victim. He admitted to "being there while it happened" but denied that he did "anything to her." He eventually admitted "it," said he was wrong and "shouldn't have did it." He said the victim assaulted him "always" and that he was trying to leave but "at the end of the day, I mean, I'm guilty in some type of way. So I apologize for whatever happened. It'll never happen again . . . . I just want to go home and be with my kids." Defendant also said he did not know if the victim's jaw was broken because he did not see her later nor did he see any medical records in his discovery.

Pastor Harris testified that since beginning the Operation He's My Brother program, Defendant had been baptized and was bringing his children to church. He also said that Defendant had been 100% cooperative and that he had seen "major changes with [Defendant] in terms of his . . . attitude with regard to the fact that he ha[d] been more humbled about the whole experience of his legal encounters." He thought Defendant had a valuable impact on the young men in the program and it would be a "great loss" if Defendant were removed from the program.

At the conclusion of the hearing, the court denied Defendant's request for probation and ordered him to serve his sentences in confinement. The court acknowledged that Defendant had "glowing recommendations" from his employer and Pastor Harris and that because Defendant had been "putting in work," his rehabilitative potential was great. However, the court ultimately determined that those factors did not outweigh Defendant's past criminal history, his continued possession of a firearm after being expressly warned against doing so, his lack of accountability, and the seriousness of his offense. Additionally, the court noted that Defendant showed "an underpinning of aggression and anger" and was "a danger to the community."

**Analysis**

On appeal, Defendant argues that the trial court abused its discretion by denying his petition for a suspended sentence and probation. The State contends that the record fully supports the trial court's sentencing determination. We agree with the State.

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors. *State v. Bise*, 380 S.W.3d 682, 709-10 (Tenn. 2012).[1] The resulting sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* This abuse of discretion standard applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016); T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

A trial court must place its reasoning for imposing a specific sentence into the record to allow for appellate review, but "there is no requirement that such reasoning be particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. For within-range sentences, appellate courts "may, but [are] not required to, apply a presumption of reasonableness" to the trial court's determination. *Id.* at 704 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). However, a trial court is "not required to utilize any 'magic words' . . . when discussing the relevant factors in order to receive the presumption of reasonableness." *State v. King*, 432 S.W.3d 316, 327 n.8 (Tenn. 2014) (internal citation omitted). "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The application and weighing of the relevant factors can be inferred from the trial court's discussion in the record. *See State v. Brooks*, No. W2015-00833-CCA-R3-CD, 2017 WL 758519, at *8 (Tenn. Crim. App. Feb. 27, 2017). A trial court's denial of probation "will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014); *see* T.C.A. § 40-35-210(b)(1)-(7).

---

[1] In his brief, Defendant cites a pre-*Bise* case and mistakenly claims the standard is *de novo* review.

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). A standard offender convicted of a Class C, D, or E felony is considered a favorable candidate for alternative sentencing, including probation, absent evidence to the contrary. *Id.* § 40-35-102(6)(A). Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

*Id.* § 40-35-210(b).

Although the trial court must consider probation as an alternative sentence for eligible defendants, an eligible defendant is not automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must show that the alternative sentencing option imposed "will subserve the ends of justice and the best interests of both the public and the defendant." *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). In considering whether a defendant is a suitable candidate for probation, the trial court should look at "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). When considering a sentence of confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

In this case, Defendant pled guilty to a Class B and a Class C felony as a Range I offender and agreed to an effective eight-year sentence. As the trial court pointed out, a defendant who receives a sentence of ten years or less is "generally deemed eligible for a probated sentence," and as such, the court "must automatically consider the defendant for probation." *See* T.C.A. § 40-35-303(a). However, because he was convicted of a Class B felony, Defendant was not considered to be a favorable candidate for alternative sentencing. *See id.* § 40-35-102(6)(A). The court noted that it was Defendant's burden to demonstrate that a sentence of full probation "would subserve the ends of justice in the best interest of both the public and the defendant." Ultimately, the court ordered Defendant's sentence to be served in confinement.

The trial court considered the facts and circumstances of the case presented at the plea hearing, the presentencing report, the victim impact statements, the testimony presented at the sentencing hearing, the arguments of both parties as to sentencing alternatives, and the purposes and principles of sentencing. The court acknowledged that Defendant had made efforts at rehabilitation but also noted that Defendant would not answer the questions during his testimony, that "his attitude . . . while [] adversarial by definition, the absolute disrespect that he has shown this Court today is shocking." The court also observed that Defendant had an "underpinning of aggression and anger." In denying Defendant's request for probation, the trial court relied on Defendant's criminal history, his repeated, willful violations of the law concerning firearm possession, and his lack of accountability. The court found that Defendant was a danger to the community and ordered incarceration to avoid depreciating the seriousness of the offense.

Because the record reflects that the trial court considered the applicable factors in determining the manner of service for Defendant's convictions and made appropriate findings of fact in support of its decision, we conclude that the trial court did not abuse its discretion. Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

s/**_Jill Bartee Ayers_**
JILL BARTEE AYERS, JUDGE